UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARR INDEMNITY & LIABILITY COMPANY,

Plaintiff,

-v.-

EXCELSIOR INSURANCE COMPANY,

Defendant.

19 Civ. 3747 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Starr Indemnity & Liability Company ("Starr") has brought this action seeking a declaratory judgment that Defendant Excelsior Insurance Company ("Excelsior") is obligated to indemnify parties to an underlying personal injury lawsuit in the Supreme Court of the State of New York, Kings County (the "Underlying Action"). Starr argues that the parties are "additional insureds" under policies issued by Excelsior to a non-party, and now seeks reimbursement for 50% of the indemnity payments it incurred in the Underlying Action. Starr and Excelsior have cross-moved for summary judgment on the questions of: (i) whether Excelsior was obligated to indemnify the defendants in the Underlying Action, and (ii) if so, the extent of its indemnity obligation. For the reasons that follow, Starr's motion is granted, and Excelsior's motion is denied.

## BACKGROUND[1]

### A.    Factual Background

### 1.    The Underlying Action

In April 2015, Kenneth Jacobsen initiated the Underlying Action by filing

a lawsuit in the Supreme Court of the State of New York, Kings County.  (*See*

*generally* Underlying Complaint).  According to Jacobsen's complaint,

JPMorgan Chase & Co. ("JPMorgan") owns the premises at 4 Metrotech Center

in Brooklyn, New York (the "Jobsite").  (*Id.* at ¶¶ 17-18).  JPMorgan retained

Americon Construction, Inc. ("Americon") to serve as general contractor on a

construction project on the Jobsite.  (*Id.* at ¶ 23).  Americon proceeded to hire

---

[1]    The facts stated herein are drawn from the parties' submissions in connection with their motions for summary judgment.  Starr's Rule 56.1 Statement of Material Facts is referred to as "Pl. 56.1" (Dkt. #46), and Excelsior's Rule 56.1 Statement of Undisputed Facts is referred to as "Def. 56.1" (Dkt. #51).  Excelsior's response to Starr's Rule 56.1 Statement is referred to as "Def. Opp. 56.1" (Dkt. #55), and Starr's response to Excelsior's Rule 56.1 Statement is referred to as "Pl. Opp. 56.1" (Dkt. #53).  The Complaint in the Underlying Action is referred to as the "Underlying Complaint" (Dkt. #45-1).

Citations to the parties' Rule 56.1 Statements incorporate by reference the documents and deposition testimony cited therein.  *See* Local Rule 56.1(d).  Generally speaking, where facts stated in a party's Local Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Rule 56.1(c), (d); *Biberaj* v. *Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." (internal quotation mark omitted) (quoting *T.Y.* v. *N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009))).

For ease of reference, Starr's brief in support of its motion for summary judgment is referred to as "Pl. Br." (Dkt. #43), and Excelsior's opposition brief thereto as "Def. Opp." (Dkt. #54).  Excelsior's brief in support of its motion for summary judgment is referred to as "Def. Br." (Dkt. #50), and Starr's opposition brief thereto as "Pl. Opp." (Dkt. #52).  The October 28, 2014 Purchase Order between Americon Construction, Inc. ("Americon") and Tri-State Computer Flooring Co., Inc. ("Tri-State") is referred to as the "Tri-State Agreement" or the "Agreement" (Def. 56.1, Ex. 2).  The Commercial General Liability Policy and Commercial Umbrella Policy issued by Excelsior to Tri-State are referred to as the "Excelsior Policies" or the "Policies" (Def. 56.1, Ex. 31, 31b, & 32).

National Acoustics, Inc. ("National Acoustics") as the project's drywall and ceiling subcontractor (*see generally* Def. 56.1, Ex. 3), and Tri-State Computer Flooring Co., Inc. ("Tri-State") as the project's flooring subcontractor (*see generally* Tri-State Agreement).

Jacobsen, an employee of National Acoustics, alleged that on March 2, 2015, he was injured while performing work on the Jobsite when his scaffolding tipped.  (Underlying Complaint ¶¶ 32-33).  He alleged that he sustained severe and permanent injuries through no fault of his own.  (*Id.* at ¶ 33).  Jacobsen's complaint named JPMorgan, Americon, and the New York City Industrial Development Agency as defendants (collectively, the "Underlying Defendants").  (*See generally id.*).  Jacobsen sought recovery against the Underlying Defendants based upon alleged violations of the New York Labor Law.  (*Id.* at ¶ 34).  Following motion practice, the trial court granted Jacobsen partial summary judgment on his claim under New York Labor Law § 240(1), and denied the Underlying Defendants' cross-motions seeking dismissal of Jacobsen's claims under New York Labor Law §§ 200 and 240(6).  (Pl. 56.1 ¶ 7; Def. 56.1 ¶ 47).  The parties proceeded to trial on damages.  (Def. 56.1 ¶ 75).  During the trial, the parties reached a settlement pursuant to which Jacobsen would receive $3,750,000.  (Pl. 56.1 ¶ 12; Def. 56.1 ¶¶ 77-78).

### 2.     Relevant Contracts

Pursuant to their subcontracts with Americon, Tri-State and National Acoustics were required to obtain primary and excess insurance under which the Underlying Defendants would be included as additional insureds.  (Pl. 56.1

¶ 6; Def. 56.1 ¶¶ 6, 9).  The subcontractors proceeded to obtain such

insurance:  National Acoustics obtained a general liability policy from Starr (Pl.

56.1 ¶¶ 15-16; Def. 56.1 ¶ 94), and Tri-State obtained a Commercial General

Liability ("CGL") Policy and a Commercial Umbrella Policy from Excelsior (Pl.

56.1 ¶¶ 18-20; Def. 56.1 ¶¶ 90-93).  A third subcontractor, Unity Electric

("Unity"), obtained an insurance policy from Harleysville Insurance Company

("Harleysville").  (Def. 56.1 ¶¶ 11, 27).

### a.    The Contract Between Tri-State and American

Resolution of the instant cross-motions turns on the text and interplay of

provisions in the contract between Tri-State and American, and the contracts

between Tri-State and Excelsior.  To begin, the Tri-State Agreement provided

that Tri-State would purchase and maintain insurance that afforded American

and JPMorgan certain protections, specifically protections for "[c]laims for

damages because of bodily injury" and "[c]laims for damages because of

personal injury"

> which may arise out of or result from operations,
> attempted operations, or failure to perform operations
> under this Agreement, whether such operations or
> attempted operations are to be performed by [Tri-State]
> or by any of its Subcontractors or agents or by anyone
> directly or indirectly employed by any of them or by
> anyone else for whose acts any of them may be liable.

(Tri-State Agreement 1).  The Agreement further stated that American was to be

named as an additional insured on Tri-State's primary and excess liability

policies so as:

> to completely protect Americon from claims arising out
> of or resulting from [Tri-State's] operations, attempted
> operations, or failure to perform operations under this
> Agreement, whether such operations are or are to be
> performed by [Tri-State] or by any of its Subcontractors
> or agents or by anyone directly or indirectly employed
> by any of them or by anyone else for whose acts any of
> them may be liable.

(*Id.* at 2).  Additionally, the Agreement provided that Americon's agreement with

JPMorgan was "incorporated by reference" and that any entities that Americon

was required to name as additional insureds were to be named and included as

additional insureds on Tri-State's insurance policies.  (*Id.*).  The Agreement

stated that Tri-State's insurance coverage provided for Americon would be "on

a primary and non-contributory basis by [Tri-State]."  (*Id.*).  Conversely, any

insurance maintained by Americon would "be maintained on an excess basis

only and will not contribute with [Tri-State's] insurance coverage until such

time as [Tri-State's] primary and excess limits have been exhausted."  (*Id.*).

Lastly for these purposes, the Agreement provided that Tri-State would

"defend, indemnify and save harmless" Americon and any related entities,

against any claims "on account of bodily or personal injury ... directly or

indirectly arising out of or in connection with or relating to the operations ... in

connection with or pursuant to this Agreement," whether or not the injury was

attributed to Tri-State or its agents' "active, passive or concurrent negligence or

fault."  (Tri-State Agreement 2-3).  Elsewhere, the Agreement reiterated Tri-

State's obligation to indemnify Americon, JPMorgan, and any related entities,

individuals or other additional insureds "from and against any claim …

attributable to personal injury [or] bodily injury." (*Id.* at 18).

### b.  The Contracts Between Tri-State and Excelsior

Tri-State proceeded to obtain a CGL Policy and a Commercial Umbrella

Policy from Excelsior, numbered CBP 8755915 and CU 8971948, respectively,

for the policy period February 6, 2015, to February 6, 2016 (collectively, the

"Excelsior Policies" or the "Policies").  (Def. 56.1, Ex. 31, 31b, & 32).[2]  The

Excelsior Policies include a standard "policyholder alert" notifying policyholders

that there were "two ways" to limit their liability under New York Labor Law.

(Def. 56.1, Ex. 31 at 7).  The first means of limiting liability is to have a

contractor issue a "Certificate of Insurance" naming the protected party an

"Additional Insured" and indicating "that the coverage provided is primary and

covers both direct and vicarious liability[.]" (*Id.*).  The second method is for the

protected party and contractor to enter into an "indemnification agreement" so

that, in the event of a worker's injury and resulting lawsuit, the contractor is

responsible for paying to defend the case "and any other money owed." (*Id.*).

As it happened, American had invoked both ways of limiting its liability in its

contract with Tri-State.

The Excelsior Policies include a number of provisions defining "Additional

Insureds." (*See* Def. 56.1, Ex. 31 at 75-76; Ex. 31b at 72-75).  The CGL Policy

states that "Additional Insureds" include:

---

[2]      The Court refers to the Policies collectively, and will address distinctions between the
Policies where applicable.

> any person or organization when [Tri-State] and such person or organization have agreed in writing in a contract agreement or permit that such person or organization be added as an additional insured on [Tri-State's] policy to provide insurance such as is afforded under this Coverage Part.  Such person or organization is an additional insured only with respect to liability arising out of: [i] [Tri-State's] ongoing operations for that person or organization; or [ii] Premises or facilities owned or used by [Tri-State].

(Def. 56.1, Ex. 31 at 75).  The Policy included the caveat that the additional insured provision did not apply to "'bodily injury' … arising out of any act, error or omission that results from the additional insured's sole negligence or wrongdoing."  (*Id.* at 76).  And the Policy further provided that the "additional insured" provision was "excess over any other insurance for which the additional insured qualifies as an insured whether primary, excess, contingent or on any other basis," unless — as happened here — a written contract or agreement between Tri-State and the additional insured "specifically requires that this insurance be provided on either a primary basis or a primary and noncontributory basis."  (*Id.* at 80).

Elsewhere, the Policy confined "additional insured" status to apply to:

> liability for "bodily injury" … caused, in whole or in part, by … [Tri-State's] acts or omissions or the acts or omissions of those acting on [Tri-State's] behalf in the performance of [Tri-State's] ongoing operations for the additional insured that are the subject of the written contract or written agreement provided that the "bodily injury" … occurs … subsequent to the signing of such written contract or written agreement.

(Def. 56.1, Ex. 31b at 72).  In addition to including these definitional provisions, the Policy also stated that its coverage applied on a "blanket" basis,

7

meaning that the parties did not need to "designate[]" specific additional insureds and projects for additional insured coverage.  (Def. 56.1, Ex. 31 at 20-21, 87).

### 3.    The Tenders and Responses

In June 2015, American's primary insurer tendered the defense and indemnity of Americon to the subcontractors involved in the projects and their corresponding insurers, including Starr, Excelsior, and Harleysville.  (Pl. 56.1 ¶ 21; Def. 56.1 ¶¶ 22, 24, 26).  In response, Starr issued a letter accepting coverage on behalf of the Underlying Defendants on a primary and noncontributory basis, while reserving its right to "rais[e] any other coverage issues available under the policy or law as more information becomes known." (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 28).  Harleysville denied the tender and stated that it did not find that its additional insured policy was triggered.  (Def. 56.1 ¶ 29). Excelsior issued a letter accepting additional coverage on behalf of the Underlying Defendants subject to a reservation of rights.  (Pl. 56.1 ¶¶ 21-22; Def. 56.1 ¶ 30).  Excelsior's letter stated that the Underlying Defendants were additional insureds "only to the extent [their] liability arises out an act or omission of Tri-State," and that coverage would not be available "to the extent that Claimant's injuries arose out of the sole negligence of [the Underlying Defendants]."  (Pl. 56.1 ¶¶ 21-23; Def. 56.1 ¶ 30 (referencing Ex. 31 at 75-76)). The letter also stated that Tri-State's Policy was "excess to any other insurance for which [the Underlying Defendants] have been added as additional insureds[.]"  (Def. 56.1 ¶ 30).  In a letter sent several years later in which it

refused to reconsider its position, Excelsior referenced a different additional insured provision in its Policies, which provision limited its liability to injuries "caused in whole or in part" by Tri-State's acts or omissions, or acts or omissions of those acting on Tri-State's behalf.  (Pl. 56.1 ¶ 24; Def. 56.1 ¶ 31 (referencing Ex. 31b at 73)).

### 4.    The Third-Party Action

In October 2015, while the Underlying Action was pending, the Underlying Defendants commenced a third-party action against Tri-State and Unity, seeking indemnification and contribution (the "Third-Party Action").  (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 36).  The parties filed cross-motions for summary judgment on the Underlying Defendants' indemnification claims, but the court denied the motions, finding that questions of fact existed as to the parties' respective negligence.  (Pl. 56.1 ¶ 9; Def. 56.1 ¶ 52).  The Underlying Defendants' contribution claim was tried before a jury, which determined that both Tri-State and the Underlying Defendants were negligent.  (Pl. 56.1 ¶¶ 10-11; Def. 56.1 ¶¶ 61-71; Pl. Opp. 56.1 ¶ 65).  When asked to apportion liability, the jury found that Tri-State was 35% at fault for the accident, and that the Underlying Defendants were 65% at fault.  (Pl. 56.1 ¶ 11; Def. 56.1 ¶¶ 70-71).[3]

In accordance with the jury's determination, Starr agreed to pay 65% of the settlement owed to Jacobsen pursuant to the agreement reached in the

---

[3]    The jury determined that Unity was negligent, but that its negligence was not a substantial factor in causing Jacobsen's accident.  (Def. 56.1 ¶ 69).

Underlying Action.  (Def. 56.1 ¶¶ 78-79; Pl. Opp. 56.1 ¶¶ 74, 79).[4]  Excelsior
agreed to pay the remaining 35% of the settlement fees, in accordance with the
jury's determination as to Tri-State's negligence.  (Pl. 56.1 ¶ 13; Def. Opp. 56.1
¶ 12; Def. 56.1 ¶¶ 81-82, 85; Pl. Opp. 56.1 ¶¶ 73, 81-82).

## B.    Procedural Background

On March 4, 2019, Starr filed a Complaint in the Supreme Court of the
State of New York, New York County, seeking a declaration that Excelsior and
Harleysville were required to defend and indemnify the Underlying Defendants
in the Underlying Action.  (Dkt. #1-1).  The action was subsequently removed to
federal court.  (Dkt. #1).  Following the filing of the instant litigation, the
parties proceeded to trial in the Third-Party Action, pursuant to which Starr
and Excelsior paid 65% and 35% of Jacobsen's settlement costs, respectively.
(Pl. 56.1 ¶¶ 12-13; Def. 56.1 ¶¶ 60, 78-82).  In December 2019, Harleysville
was voluntary dismissed from the case upon informing the Court that it had
reached a settlement in principle with the parties.  (See Dkt. #32, 40).

Following an unsuccessful settlement conference (see Dkt. #37), the
parties to this action filed a joint letter seeking leave to move for summary
judgment on the remaining issue of the extent of Excelsior's indemnity
obligations to the Underlying Defendants (Dkt. #38).  The Court granted them
such leave (Dkt. #39), and on March 13, 2020, the parties submitted their
cross-motions for summary judgment and supporting papers (Dkt. #42-46, 48-

---

[4]      Starr maintains that it reserved its rights to pursue reimbursement from Tri-State and
Unity's insurance carriers in the instant action.  (Pl. Opp. 56.1 ¶ 79).

51).  The parties filed their opposition briefs and supporting papers on April 2, 2020.  (Dkt. #52-53, 54-55).

## DISCUSSION

### A.    Applicable Law

#### 1.    Summary Judgment Under Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[5]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor."  *Vt. Teddy Bear Co., Inc.* v. *1-800*

---

[5]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) … chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant has met its

burden, "its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts" and, toward that end, "must come

forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)

(internal citations and quotation marks omitted).  The nonmoving party may

not rely on "mere speculation or conjecture as to the true nature of the facts to

overcome a motion for summary judgment."  *Knight* v. *U.S. Fire Ins. Co.*, 804

F.2d 9, 12 (2d Cir. 1986).

### 2.     Interpretation of Insurance Contracts Under New York Law[6]

"Insurance policies are, in essence, creatures of contract, and,

accordingly, subject to principles of contract interpretation."  *Porco* v. *Lexington*

*Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (internal quotation marks

---

[6]     Based on the parties' briefing, the Court understands them to be in agreement that New York law governs their contractual interpretation arguments, though Starr adds that New Jersey law would require the same outcome.  (*See* Pl. Br. 11-14; Def. Br. 12-21; Pl. Opp. 2 n.1).  As "implied consent to use a forum's law is sufficient to establish choice of law," the Court applies New York law in its interpretation of the agreements at issue. *Tehran-Berkeley Civil & Envt. Eng'rs* v. *Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989); *see Bennett* v. *Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013) (summary order) ("In a diversity case, where the parties have agreed to the application of the forum law — as evidenced by reliance on that law in the parties' briefing, as in this case — their agreement ends the choice-of-law inquiry.").  Moreover, the Court is unaware of any conflicts between New York and New Jersey law as it pertains to the interpretation of the underlying agreements.  Under both New York and New Jersey law, unambiguous terms in insurance agreements are to be interpreted in light of their plain and ordinary meaning.  *See, e.g.*, *10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) ("We must give 'unambiguous provisions of an insurance contract ... their plain and ordinary meaning.'" (quoting *Essex Ins. Co.* v. *Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010))); *Memorial Properties, LLC* v. *Zurich Am. Ins. Co.*, 210 N.J. 512, 525 (2012) ("The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolved in favor of the insured." (internal quotation marks and citations omitted)).

omitted) (quoting *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001)).  Under New York law, the interpretation of a contract "is a matter of law for the court to decide."  *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted); *see also Parks Real Estate Purchasing Grp.* v. *St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (internal quotation marks and citation omitted)).  In this case, "[t]he parties do not dispute the material facts underlying the claim[,]" therefore, the case rests on interpretation of the insurance contract, which "is a question of law."  *VAM Check Cashing Corp.* v. *Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

The Court must interpret unambiguous contractual provisions in light of "'their plain and ordinary meaning.'"  *10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011) (quoting *Essex Ins. Co.* v. *Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)).  The Court must interpret such terms "in light of 'common speech' and the reasonable expectations of a businessperson."  *Belt Painting Corp.* v. *TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (internal citation omitted).  "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate ....  Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly."  *Palmieri* v. *Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (internal quotation marks and citations omitted).

13

If a contract term is "susceptible to at least two reasonable interpretations," summary judgment is inappropriate because the meaning of an ambiguous contract term is "generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Inst.* v. *Charter Commc'ns, Inc.*, 875 F.2d 1044, 1048 (2d Cir. 1989) (internal citations omitted). In contrast, if the contractual terms are unambiguous, the dispute is properly resolved on summary judgment, and the court must "give effect to the intent of the parties as expressed in the clear language of the contract." *Mount Vernon Fire Ins. Co.* v. *Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks and citation omitted).

## B.    Analysis

The Court considers the extent of Excelsior's obligations to the Underlying Defendants under the Tri-State Agreement and the Excelsior Policies, and whether such obligations are circumscribed by the jury decision in the Third-Party Action. Starr argues that the Underlying Defendants are additional insureds under Excelsior's Policies, and that Tri-State's negligence, as determined by the jury in the Third-Party Action, triggered Excelsior's obligation to indemnify the Underlying Defendants. (Pl. Br. 9-17; Pl. Opp. 3-9). For the purposes of its motion, Starr concedes that the Excelsior Policies and Starr's agreement with National Acoustics provide "co-insurance" to the Underlying Defendants. (Pl. Br. 1 n.1). Starr accordingly seeks reimbursement for 50% of the payment it made to Jacobsen on behalf of the Underlying Defendants. (*Id.*). Excelsior argues in contrast that its liability is confined to

the percentage of fault assigned to it by the jury in the Third-Party Action.
(Def. Br. 12-21; Def. Opp. 1-11).  As set forth in the remainder of this Opinion,
Excelsior's *post hoc* efforts to rewrite the parties' obligations fail.

### 1. The Underlying Defendants Are Additional Insureds Requiring Indemnification Under the Tri-State Agreement and Policies

As explained above, pursuant to the various additional insured
provisions in the Agreement, Tri-State was obligated to maintain a policy that
provided American and the Underlying Defendants with coverage in the event
of an accident such as Jacobsen's.  And Tri-State proceeded to secure such
coverage in its Policies with Excelsior.

### a. The Underlying Defendants Are Additional Insureds

Tri-State and American's Agreement provided the Underlying Defendants
with several forms of protection from liability for on-site injuries.  First, the
Agreement required that Tri-State purchase and maintain insurance that
protected American and JPMorgan from claims for damages for bodily injury or
personal injury "which may arise out of or result from operations … under [the]
Agreement," regardless of whether the operations were performed by Tri-State,
or any of its subcontractors, agents, or employees.  (Tri-State Agreement 1).
The Agreement further provided that American would be named as an
additional insured on Tri-State's policy, so as to "completely protect American
from claims arising out of or resulting from [Tri-State's] operations," and that
any entities American was required to name as additional insureds would also
be included in Tri-State's policy.  (*Id.* at 2).  The Agreement specified the order

in which Tri-State's coverage would apply with respect to American, stating that it was "on a primary and non-contributory basis[.]" (*Id.*). Additionally, the Agreement included indemnification provisions stating that Tri-State would "defend, indemnify[,] and save harmless" American and any related entities against any claims "on account of bodily or personal injury ... directly or indirectly arising out of or in connection with or relating to the operations ... in connection with or pursuant to this Agreement" whether or not the injury was attributed to Tri-State's "active, passive or concurrent negligence or fault." (*Id.* at 2-3; *see also id.* at 18).

Under the terms of the Agreement, Tri-State and American expressly contracted to transfer the risk of liability arising from accidents on the Jobsite to Tri-State's insurer. (*See* Def. 56.1, Ex. 31 at 9 (stating that policyholders can limit their liability either by having their contractor name them as an "additional insured" or by entering into an indemnification agreement with their contractor)). As such, Excelsior's claim that Starr is now endeavoring to "pass the risk" onto it is a mischaracterization (Def. Br. 10), for Excelsior has held this risk since it issued policies that provided the broad coverage required by the Tri-State Agreement. *See Burlington Ins. Co.* v. *N.Y.C. Transit Auth.,* 29 N.Y.3d 313, 327 (2017) ("[I]f the parties desire a different allocation of risk, they are free to negotiate language that serves their interests.").

The Excelsior Policies include several provisions defining additional insureds that share certain key characteristics. Under the Policies, additional insureds are those whom: Tri-State "agreed in writing ... be added as an

16

additional insured." (Def. 56.1, Ex. 31 at 75; *see also* Ex. 31b at 72 (stating that additional insureds include those who Tri-State had "agreed to add … in a written contract or written agreement")). Certain provisions confine the protections conferred to additional insureds as limited to "liability arising out of … [Tri-State's] ongoing operations for that person or organization … or [p]remises or facilities owned or used by [Tri-State]. (Def. 56.1, Ex. 31 at 75). Other provisions limit additional insureds' protections to encompass "liability for bodily injury" caused "in whole or in part" by Tri-State's acts or omissions, or those of its agents. (Def. 56.1, Ex. 31b at 72). And in addition to these provisions, the Policies provide that coverage would apply on a "blanket" basis, meaning that the parties did not need to "designate[]" specific additional insureds and projects for additional insured coverage. (Def. 56.1, Ex. 31 at 20-21, 87).

The Agreement and the Policies' provisions are unambiguous; there is no genuine dispute of material fact that the Underlying Defendants are additional insureds. Excelsior does not dispute that Tri-State and American agreed "in writing" that American and JPMorgan would be additional insureds under Tri-State's Policies. (Tri-State Agreement 4-5). Nor does it dispute that the Policies it issued Tri-State provided for broad "blanket" coverage of additional insureds. (Def. 56.1, Ex. 31 at 87). Lastly, while Excelsior has previously represented that Tri-State's Policies were "excess to any other insurance" for which the Underlying Defendants were additional insureds (Def. 56.1 ¶ 30), under the express terms of the Agreement and Policies, Excelsior was required to serve as

the primary insurer of Tri-State's additional insureds.  (*See* Def. 56.1, Ex. 31 at 80 (stating that the additional insured provision was "excess over any other insurance" unless a written agreement between Tri-State and the additional insured "specifically requires that this insurance be provided on … a primary and noncontributory basis"); Agreement 2 (requiring that Tri-State provide American with insurance coverage "on a primary and non-contributory basis")).[7]

The Court then turns to the question of whether, under the terms of the Policies, Excelsior is obligated to indemnify the Underlying Defendants with respect to the claims asserted in the Underlying Action.

### b.     Excelsior Is Obligated to Indemnify the Underlying Defendants

"[A]n insurer's duty to indemnify is … triggered by a determination that the 'loss, as established by the fact, is covered by the policy.'"  *Century Sur. Co.* v. *Franchise Contractors LLC*, No. 14 Civ. 277 (NRB), 2016 WL 1030134, at *4 (S.D.N.Y. Mar. 10, 2016) (quoting *Atl. Mut. Ins. Co.* v. *Terk Techs. Corp.*, 763 N.Y.S.2d 56, 60 (1st Dep't 2003)).  The duty to indemnify is measured by the "actual basis for the insured's liability" rather than "the allegations of [the] pleadings."  *Servidone Constr. Corp.* v. *Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985).

On these summary judgment motions, the indemnification question turns on whether Jacobsen's claims fall within the additional insured

---

[7]     Excelsior has also stated that its coverage was "co-primary" with the coverage provided by Starr and Harleysville.  (Def. Br. 24).

provisions in the Policies.  In other words, the issue is whether the Underlying Defendants' liability arises from injuries either "arising out of … [Tri-State's] ongoing operations" or that were caused "in whole or in part by [Tri-State]." (Def. 56.1, Ex. 31 at 75; Ex. 31b at 72).

Starr argues that the jury's determination in the Third-Party Action as to Tri-State's negligence forecloses this inquiry, as it equates to a determination that the Underlying Defendants' liability "arose out of" or was "caused by" the operations or acts or omissions of Tri-State.  (Pl. Br. 11-14).  Excelsior counters that the liability assigned to the Underlying Defendants by the jury is outside the scope of the Policies' additional insured provisions, as such liability arose solely out of the Underlying Defendants' operations.  (Def. Br. 13-21).  Excelsior maintains that for this reason, Starr should have similarly been able to escape liability, had Starr not failed to tender the defense and indemnity of the Underlying Defendants back to their respective primary carriers.  (*Id.* at 22-23). But Starr correctly assessed and abided by its duties with respect to the Underlying Defendants.  It is Excelsior that has misjudged its defense and indemnity obligations.

The New York Court of Appeals has distinguished between additional insured endorsements containing the phrases "arising out of" and "caused by." *See Burlington Ins. Co.*, 29 N.Y.3d at 321-24.  In *Burlington*, the Court of Appeals held that "caused, in whole or in part, by" language required the named insured's conduct to be the "proximate cause" of the plaintiff's injury. *Id* at 322-24.  The Court of Appeals contrasted proximate causation with "but

19

for" causation, explaining that while the latter cannot be partial, an event can have "more than one proximate cause." *Id.* at 321-22.  The Court of Appeals proceeded to apply an additional insured provision that included "in whole or in part" language, and determined that defendants were not additional insureds where the liability arose from their sole negligence.  *See id.* at 325. Such an analysis leads to the logical conclusion that, under an additional insured provision akin to that at issue in *Burlington*, where liability is not attributed to the underlying defendants' sole negligence, and where the named insured is more than 0% liable for the underlying plaintiff's injuries, additional insured coverage is triggered.  For, in such circumstances, the plaintiff's damages are caused, in part, by the named insured's operations.  Here, where Tri-State and Excelsior incorporated "in whole or in part" language into the Policies, and Tri-State has been deemed 35% negligent by a jury in the Third-Party Action, it can fairly be said that the Underlying Defendants' liability was caused in part by Tri-State's operations.[8]

---

[8]    Starr argues that the Court should determine that the broader "arising out of" language in Excelsior's Policies governs its additional insured obligations.  (Pl. Br. 16-17).  The Court does not feel compelled to decide this issue, given that Excelsior is responsible for indemnifying the Underlying Defendants under the narrower "caused, in whole or in part by" provision discussed above.  However, in the interest of completeness, the Court observes that Excelsior would similarly be required to indemnify the Underlying Defendants under the "less onerous" "arising out of" standard, which "'requires only that there be *some* causal relationship between the injury and the risk for which coverage is provided.'"  *Liberty Mut. Ins. Corp.* v. *N.Y. Marine & Gen. Ins. Co.*, No. 19 Civ. 183 (GHW), 2020 WL 7211759, at *8 (S.D.N.Y. Dec. 7, 2020) (quoting *Fed. Ins. Co.* v. *Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011)).  "The New York Court of Appeals has held that the phrase 'arising out of' is ordinarily understood to mean originating from, incident to, or having connection with."  *Id.* (quoting *Fed. Ins. Co.*, 639 F.3d at 568) (internal quotation marks omitted).  Where Tri-State was partially responsible for the plaintiff's damages, it meets the standard for "having connection with" the Underlying Defendants' liability.  *Cf. Regal Constr. Corp.* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 39 (2010) (finding that the alleged negligence arose

### 2.      The Jury's Decision in the Third-Party Action Does Not Circumscribe Excelsior's Liability

Excelsior argues principally that its liability is confined to the jury's determination that it was 35% at fault. (Def. Br. 12-21). And it submits that having paid 35% of the Jacobsen settlement, it has satisfied its obligations to the Underlying Defendants. (*Id.* at 25). However, this argument is too clever by half: It conflates Excelsior's liability to Jacobsen on behalf of Tri-State with Excelsior's separate obligation to provide coverage to Tri-State's additional insureds. Excelsior is liable for the accident that occurred on Tri-State's watch, and for which Tri-State was determined to be 35% at fault. In addition, Excelsior has a separate responsibility to indemnify the parties that qualify as additional insureds under the Policies issued to Tri-State.

In support of its position, Excelsior refers the Court to a number of decisions by New York courts, all of which are distinguishable on their facts. Many of the cases relied upon by Excelsior stand for the uncontroversial proposition that courts will defer a decision on indemnification until there has been a determination on liability in the underlying litigation. (*See* Def. Br. 12-18). *See, e.g., Landpen Co., L.P.* v. *Md. Cas. Co.*, No. 03 Civ. 3624 (RJH) (HBP), 2005 WL 356809, at *9-10 (S.D.N.Y. Feb. 15, 2005); *Emps. Ins. Co. of Wausau* v. *Gen. Star Nat'l Ins. Co.*, No. 03 Civ. 6575 (DLC), 2004 WL 1555143, at *4 (S.D.N.Y. July 9, 2004); *Bovis Lend Lease LMB, Inc.* v. *Cont'l Cas. Ins. Co.*, No.

on the part of the additional insured rather than the named insured was "of no consequence" as the additional insured's potential liability nonetheless "ar[ose] out of" the named insured's operation, and it was thus entitled to both defense and indemnification).

02 Civ. 7674 (DC), 2004 WL 691395, at *4 (S.D.N.Y. Mar. 31, 2004).  Here,
where the Third-Party Action proceeded to a trial that resulted in a jury's
determination as to negligence, a declaratory judgment as to indemnification is
not premature.  *Cf. Associated Indem. Corp.* v. *Fairchild Indus., Inc.*, 961 F.2d
32, 35 (2d Cir. 1992) (advising that "courts should focus on the practical
likelihood that the [contingent liability] will occur" in considering whether
indemnification claims are ripe for adjudication (citation omitted)).  And, as
discussed above, Starr has demonstrated that it is entitled to such a
declaratory judgment given the jury's determination that the accident was
attributable in part to Tri-State's negligence.  *Cf. Burlington Ins. Co.*, 29 N.Y.3d
at 322-25.

Excelsior otherwise relies on cases that are factually inapposite.  For
example, Excelsior cites to cases holding that a determination in the
underlying action that the injuries suffered by the plaintiff did not arise from
the subcontractor's work nullifies any indemnification obligation.  (Def. Br. 19-
20).  *See Port Auth. of N.Y. & N.J.* v. *Brickman Grp. Ltd., LLC*, 115 N.Y.S.3d 246,
256-57 (1st Dep't 2019); *Petracca & Sons, Inc.* v. *Capri Constr. Corp.*, 695
NY.S.2d 403, 405 (2d Dep't 1999).  Here, there was no such finding — rather,
the jury determined that Jacobsen's injuries arose in part from Tri-State's
negligence.  Excelsior also refers the Court to a decision involving an additional
insured provision that provided coverage "only to the extent that [the additional
insured] is held liable for [the named insured's] acts or omissions."  *Crespo* v.
*City of New York*, No. 23922/99 (PAV), 2004 WL 737536, at *1 (Sup. Ct. Bronx

Cnty. Apr. 2, 2004). This case can similarly be distinguished, as it provides the Court with little guidance in considering the scope of the additional insured provisions in the Tri-State Policies, given that its language "suggests that the wrongful conduct of the named insured must provide the basis for the imposition of liability on the additional insured." *See Aspen Specialty Ins. Co.* v. *Ironshore Indem. Inc.*, 42 N.Y.S.3d 121, 123 (1st Dep't 2016) (citation and alteration omitted) (distinguishing *Crespo* on the same grounds). In sum, Excelsior has failed to marshal support for the position it has taken in its briefing — that an insurer can isolate and exclude the proportionate fault of its insured, and thereby vitiate the additional insured provisions of its policies — and the Court is unaware of support in the case law for same.

Because Excelsior's liability was not confined to the jury's determination that it was 35% at fault for Jacobsen's accident, it has not satisfied its obligations to the Underlying Defendants with its prior payment of 35% of the Jacobsen settlement. As such, Excelsior remains responsible for indemnifying the Underlying Defendants pursuant to the additional insured provisions of the Policies.

## CONCLUSION

For the reasons stated in this Opinion, Starr's motion for summary judgment is GRANTED, and Excelsior's cross-motion for summary judgment is DENIED. The Court hereby declares that Excelsior has a duty to indemnify the defendants in the Underlying Action. Thus, Starr is entitled to recover 50% of the settlement payment made on behalf of the Underlying Defendants.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      February 1, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

24